Phillip BLACKWELL, Marcia Blackwell, and Michele Blackwell, Appellants–Plaintiffs,

v.

DYKES FUNERAL HOMES, INC., and Graceland Cemetery Association, Inc., Appellees–Defendants.

No. 64A04–0112–CV–554.

Court of Appeals of Indiana.

July 17, 2002.

Harold T. Harper, Harper and Rogers, Valparaiso, IN, Attorney for Appellants.

Randall J. Nye, Julie R. Hubly, Beckman, Kelly & Smith, Hammond, IN, Charles C. Hoppe, Jr., Knight, Hoppe, Kurnick & Knight, Schererville, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Today we once again revisit the scope of our "impact rule" as it relates to a claim for the negligent infliction of emotional distress. Appellants-plaintiffs Phillip, Marcia and Michele Blackwell (collectively, the Blackwells) appeal the trial court's grant of summary judgment in favor of the appellees-defendants Dykes Funeral Home, Inc., (Dykes) and Graceland Cemetery Association, Inc. (Graceland), regarding their claims against the appellants for negligent infliction of emotional distress. Specifically, the Blackwells contend that the trial court's entry of summary judgment in favor of Dykes and Graceland as to these counts along with their claim for punitive damages should be set aside because the designated evidence sufficiently established their direct involvement with the traumatic event that caused their injuries.

Concluding that the Blackwells established a genuine issue of material fact with respect to their claim against Dykes, we reverse the grant of summary judgment in its favor. However, finding that the designated evidence failed to establish any genuine issue of material fact as to Graceland's liability, we affirm the trial court's entry of summary judgment as to the Blackwells' claim against it.

### FACTS

The undisputed facts are that on December 13, 1987, Phil Blackwell, the twenty-

year-old son of Marcia and Phillip, shot and killed himself at the family residence. Phil's body was initially transported to Porter Memorial Hospital and was later taken to Dykes, the funeral home that the Blackwells chose to handle the arrangements.

The Blackwells met with Patricia Dykes[1] to make the final arrangements. They informed Patricia that they wanted Phil's body to be cremated. Thus, they chose an urn for the remains. Later that day, the Blackwells went to Graceland and requested that Phil's remains be entombed at Graceland's Chapel of Peace in a glass niche. Upon receiving Phil's body, Dykes arranged to have the cremation performed at Calvary Crematory in Portage. Calvary then picked up the body at Dykes where it was cremated on December 15, 1987. Thereafter, Calvary returned the cremated remains to Dykes within a day or two after picking up the body.

A memorial service for Phil was held at Dykes on December 17, 1987. Following the service, the Blackwells left the urn at Dykes so it could be transported to Graceland. Several days later, Dykes contacted Marcia and told her that the urn was too large and would not fit in the niche that had been chosen. In response, Marcia told Patricia that Dykes could make the decision for a replacement urn "as long as it was comparable and ... something nice." Appellants' App. p. 235, 270–71. Patricia transported the urn to Graceland on December 17, 1987. When Patricia determined that it would not fit into the niche, she returned it to Dykes. The Blackwells have not designated any evidence showing that Graceland ever took possession of the urn.

When Marcia first visited the niche at Graceland, she went inside the chapel and sat in the pews but did not approach the niche that was covered with dark amber glass. The Blackwells were not able to view the urn because it would have appeared only as a shadow behind the glass. However, in June 1999, Marcia requested that the urn be brought closer to the front of the niche. Sometime in July of that year, Marcia received a telephone call from Robert Downey—the vice president of the company that owned Graceland— informing her that Phil's remains were not in the niche. Downey explained that the niche was empty when Graceland personnel opened it.

As a result of the incident, Phillip and Marcia Blackwell filed a four-count complaint against Dykes and Graceland on September 14, 1999. Counts I and II sought damages for breach of contract, where the Blackwells contended that both defendants were liable for losing the remains. They claimed that the breach was "extreme, outrageous, grossly negligent and reckless" and, therefore, were entitled to punitive damages. Appellants' App. p. 17. Counts III and IV alleged that Dykes and Graceland were liable for the intentional and negligent infliction of emotional distress where they sought damages for "shock, overwhelming mental anguish, psychological injury and emotional trauma." Appellants' App. p. 19.

Thereafter, Dykes and Graceland move for partial summary judgment. On October 24, 2001, the trial court granted those motions on the issues of intentional and negligent infliction of emotional distress and punitive damages on the breach of contract claims. In its order, the court determined that the Blackwells' claims for intentional infliction of emotional distress could not proceed because there was no intent on

---

**1.** Patricia's duties included arranging funerals, bookkeeping and "following every detail of the families from the minute they step in the office." Appellants' App. p. 234, 326–30.

the part of the Dykes or Graceland to inflict intentional harm. Rather, the court determined that Dykes and Graceland exhibited "poor judgment." Appellants' App. p. 7. It was also determined that the Blackwells had failed to meet the criteria to support a claim for the negligent infliction of emotional distress against either defendant. Appellants' App. p. 8. Inasmuch as the Blackwells' claims for the negligent and intentional infliction of emotional distress could not succeed, the trial court also concluded that punitive damages could not be awarded. The trial court, however, permitted the Blackwells' breach of contract claims against Dykes and Graceland to proceed. The Blackwells now appeal the claim with respect to their cause of action against Dykes and Graceland for the negligent infliction of emotional distress.

## DISCUSSION AND DECISION

### I. Standard of Review

On appeal from the grant of summary judgment, this court faces the same issues that were before the trial court and analyzes them in the same manner. *Moberly v. Day*, 757 N.E.2d 1007, 1009 (Ind.2001). The purpose of summary judgment is to terminate litigation when there is no material fact in dispute and the case can be determined as a matter of law. *W.M.T. v. A.R.H.*, 638 N.E.2d 815, 817 (Ind.Ct.App.1994). When a movant for summary judgment presents evidence that negates an element of the plaintiff's cause of action and there is a prima facie showing in this evidence, the burden shifts to the plaintiff to demonstrate the existence of a genuine factual issue. If the plaintiff does not show the existence of a factual issue, the entire action will fail. *Chester v. Indianapolis Newspapers, Inc.*, 553 N.E.2d 137, 141 (Ind.Ct.App.1990). The opposing party must designate to the court

each material issue of fact that precludes entry of summary judgment and the evidence relevant thereto. Ind. Trial Rule 56(C). A factual issue is material for the purposes of T.R. 56(C) if it bears on the ultimate resolution of a relevant issue. *Murphy v. Mellon Accountants Prof'l Corp.*, 538 N.E.2d 968, 969 (Ind.Ct.App. 1989). A factual issue is genuine if it is not capable of being conclusively foreclosed by reference to undisputed facts. *Id.* As a result, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the claim. *Id.* If the opposing party fails to meet its responsive burden, the court shall render summary judgment. *W.M.T.*, 638 N.E.2d at 817. We view the pleadings, depositions, answers to interrogatories, and affidavits in the light most favorable to the non-moving party. *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind.1999).

### II. The Blackwells' Claims

The Blackwells contend that the trial court erred in granting summary judgment as to its claims against Dykes and Graceland for the negligent infliction of emotional distress. Although no physical impact occurred here, the Blackwells maintain that the circumstances dictate that their claim should proceed.

In resolving this issue, we first note that claims for the negligent infliction of emotional distress were traditionally analyzed under the traditional "impact" rule. In accordance with this doctrine, no recovery for emotional damages was available unless the emotional trauma or distress was accompanied by and resulted from a physical injury caused by an impact to the plaintiff. *See Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind.1991). The underlying rationale for Indiana's traditional im-

pact rule was that "absent physical injury, mental anguish is speculative, subject to exaggeration, likely to lead to fictitious claims, and often so unforeseeable that there is no rational basis for awarding damages." *Cullison v. Medley*, 570 N.E.2d 27, 29 (Ind.1991). In *Shuamber*, however, our supreme court modified the impact rule noting that very few states still require that the emotional distress arise out of a physical injury. The *Shuamber* court determined:

> When ... a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person ... a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Id.* at 456.

The Blackwells point out here that this court was asked to extend *Shuamber* to circumstances that involved an eight-year-old girl who, while walking to the mailbox with her six-year-old brother, heard the impact of a police car strike her brother in *Groves v. Taylor*, 711 N.E.2d 861, 862 (Ind.Ct.App.1999). In rejecting that request, we noted that *Shuamber* requires a plaintiff to show that she sustained a direct impact by the negligence of another and that she suffered an emotional trauma as a result of that direct involvement. *Id.* at 864.

In granting transfer, our supreme court observed that:

> Given that the prevention of merely spurious claims is the rationale for the *Shuamber* rule, logic dictates that there may well be circumstances where, while the plaintiff does not sustain a direct impact, the plaintiff is sufficiently directly involved in the incident giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious.

*Groves v. Taylor*, 729 N.E.2d 569, 572 (Ind.2000). It was not disputed in *Groves* that the plaintiff did not suffer the kind of direct impact required by *Shuamber* to recover as a bystander for emotional distress. *Id.* at 572. However, the court in *Groves* went on to recognize that the plaintiff must: (1) witness; (2) a fatal or serious physical injury caused by the defendant's negligent conduct (3) to a spouse, parent, child, grandparent, grandchild or sibling. *Id.* at 572–73. As in *Shuamber*, the *Groves* court evaluated a negligent infliction of emotional distress claim in the context of a bystander suffering emotional distress that resulted from a physical injury that had occurred to another person. In a more recent case, it was determined that a mother, whose three-month-old child died from multiple congenital birth defects, could claim damages for emotional distress in her medical malpractice action under the modified impact rule. *Bader v. Johnson*, 732 N.E.2d 1212 (Ind.2000). Our supreme court commented that:

> "[b]ecause the etiology of emotional disturbance is usually not as readily apparent as that of a broken bone following an automobile accident, courts have been concerned ... that recognition of a cause of action for [emotional] injury when not related to any physical trauma may inundate judicial resources with a flood of relatively trivial claims, many of which may be imagined or falsified, and that liability may be imposed for highly remote consequences of a negligent act."

*Id.* at 1221 (alterations and omission in original) (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 545, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994)).

Here, we note that the Blackwells, as bystanders, claim that they suffered emotional distress that resulted from the alleged negligent conduct that involved a close relative's remains. Even though the tripartite test set forth above may be inapposite here, our supreme court's reasoning in *Groves* is persuasive and compelling. While there was no physical impact, the Blackwells have alleged serious emotional trauma and it is of a kind that a reasonable person would experience.

In our view, this is the type of claim that our supreme court spoke of in *Groves* where the plaintiff is sufficiently and directly involved in the incident giving rise to the emotional trauma. The rationale underlying the impact rule that prevents concocted claims of mental anguish, is not implicated here. We are satisfied that the evidence designated to the trial court in this case is such that the alleged mental anguish suffered by the Blackwells is not likely speculative, exaggerated, fictitious, or unforeseeable. *See Bader*, 732 N.E.2d at 1221. Provided they can prevail on their negligence claim, we see no reason why the Blackwells should not be able to claim damages for emotional distress. As a result, we conclude that the trial court erred in granting summary judgment for Dykes, and the Blackwells' claim against it should be permitted to proceed.

We note, however, that the Blackwells have not designated any evidence showing that Graceland ever took possession of the urn. Rather, the Blackwells have only asserted that "Patricia Dykes brought [the urn], found that it didn't fit and took it back to Dykes." Appellants' Br. at 4. Because the facts did not support an inference that Graceland took possession of the urn, the Blackwells have failed to state a claim against it. Thus, we decline to disturb the trial court's entry of summary judgment in Graceland's favor.[2]

Judgment affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.

SULLIVAN, J., and DARDEN, J., concur.

2.  We note that the Blackwells have filed a reply brief, wherein they have alleged for the first time that the trial court's decision should be reversed on the basis of res ipsa loquitur. In accordance with Ind. Appellate Rule 46(C), which provides in part that "no new issues shall be raised in the reply brief," we grant Graceland's "Motion to Strike Reply Brief of the Appellants" filed with this court on May 23, 2002.