David L. KEIM, Appellant–Plaintiff,

v.

Robert S. POTTER, M.D.,
Appellee–Defendant.

No. 29A02–0208–CV–698.

Court of Appeals of Indiana.

Feb. 20, 2003.

J. Richard Kiefer, Darlene R. Seymour, Kiefer & McGoff, Indianapolis, IN, Attorneys for Appellant.

Daniel R. Fagan, Nana Quay–Smith, Candace L. Sage, Whitney White Soergel, Bingham McHale, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

David L. Keim appeals the trial court's entry of partial summary judgment in favor of Robert S. Potter, M.D. on Keim's medical malpractice claim. Keim presents two issues for our review, which we consolidate and restate as: whether the trial court erred when it found that the modified impact rule bars Keim's emotional damages claim.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

In the summer of 1993, Keim donated blood at a Red Cross center. On August 20, 1993, the Central Indiana Regional Blood Center sent Keim a letter informing him that his blood tested positive for hepatitis C and advising him to contact a physician. Accordingly, Keim consulted his family physician, Dr. Potter, who conducted two tests to confirm whether Keim had hepatitis C. The first test was a simple antibody screen, like the one the blood bank had performed, and the results were positive for hepatitis C. The second test was a recombinant immuno-blot assay ("RIBA") test, and the results were inde-terminate. Dr. Potter told Keim that the first test, the antibody screen, often results in false positives, so he advised Keim to return in December 1993 to undergo another RIBA test.

On December 27, 1993, Keim returned to Dr. Potter's office for a second RIBA test. But Dr. Potter erroneously ordered another antibody screen instead of the RIBA test. The result of the antibody screen was positive for hepatitis C. In early January 1994, Dr. Potter telephoned Keim to report that the test, which Dr. Potter believed was the RIBA test, indicated that he definitely had hepatitis C. Keim sought clarification from Dr. Potter that the result was not indeterminate again, and Dr. Potter assured Keim that the test result was positive for hepatitis C.

At that time, Keim was thirty-three years old and married, with two young children. Dr. Potter explained that the disease would cause symptoms including fatigue, pain, and jaundice, and that the quality of his life would be substantially diminished. Dr. Potter told Keim that he could develop serious liver damage, including cirrhosis and cancer. Finally, Dr. Potter explained that Keim's hepatitis C would kill him in fifteen to twenty years' time.

Because hepatitis C is transmitted through bodily fluids, Keim was forced to take extreme measures to protect his wife and children from becoming infected through contact with him. Keim and his wife had to begin using condoms every time they had intercourse; he had to keep his toothbrush and razor out of his children's reach; and the children were prohibited from eating or drinking Keim's food and drink. In addition, Dr. Potter instructed Keim to avoid alcoholic beverages, eat healthful foods, exercise regularly, and avoid over-the-counter medications

and vitamins. This advice led Keim to become compulsive about what he ate and how much he exercised. Keim's behavior and changed lifestyle had a negative impact on his relationships with his wife and children. Keim and his wife separated in 1995 and later divorced.

When he first diagnosed Keim with hepatitis C, Dr. Potter explained that he should undergo tests every six months to monitor his liver function. Over the ensuing two and one half years, none of those tests indicated any impairment of Keim's liver function. On May 13, 1996, Dr. Potter reviewed Keim's medical file and realized that a second RIBA test was never conducted. Dr. Potter admitted the mistake and told Keim that he might not have hepatitis C after all. In June 1996, Dr. Potter ordered another RIBA test, and the results were indeterminate. When pressed, Dr. Potter acknowledged that another type of test was available to determine, definitively, whether Keim had hepatitis C. The results of that final test indicated that Keim did not have hepatitis C.

Keim filed his proposed complaint with the Department of Insurance, alleging that Dr. Potter was negligent in diagnosing him with hepatitis C.[1] A medical review panel unanimously concluded that there existed a material issue of fact, not requiring expert opinion, regarding Dr. Potter's liability. Keim filed his complaint with the trial court on November 27, 2000. Dr. Potter subsequently filed a motion for summary judgment or, in the alternative, partial summary judgment, alleging, in relevant part, that Keim's emotional damages claim is barred by the modified impact rule. Following a hearing, the trial court entered partial summary judgment in favor of Dr. Potter on the issue of Keim's alleged emotional damages, and the court specified that there was no just reason for delay in the entry of final judgment on that issue. Keim brings this interlocutory appeal.

## DISCUSSION AND DECISION

Keim maintains that the trial court erred when it found that his claim for emotional damages is barred under the modified impact rule. We must agree.

In determining the propriety of summary judgment, we apply the same standard as the trial court. *Jesse v. American Cmty. Mut. Ins. Co.*, 725 N.E.2d 420, 423 (Ind.Ct.App.2000), *trans. denied.* We construe all facts and reasonable inferences to be drawn from those facts in favor of the non-moving party. *Id.* Summary judgment is appropriate when the designated evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C). The purpose of summary judgment is to terminate litigation about which there can be no material factual dispute and which can be resolved as a matter of law. *Zawistoski v. Gene B. Glick Co., Inc.* 727 N.E.2d 790, 792 (Ind.Ct.App.2000). Where, as here, the material facts are essentially undisputed, our sole task is to determine whether the trial court properly applied the law to the facts. *Laux v. Chopin Land Associates, Inc.*, 615 N.E.2d 902, 905 (Ind.Ct. App.1993), *trans. denied.*

■ In order to maintain a cause of action for negligent infliction of emotional distress under Indiana law, a plaintiff must

---

1. Keim does not include a copy of the proposed complaint filed with the Department of Insurance in his appendix on appeal. In his brief, Keim states that he filed his proposed complaint on March 17, 2000, and Dr. Potter adopts Keim's statement of the case. But that date appears to be a typographical error.

satisfy the "impact rule." *Alexander v. Scheid,* 726 N.E.2d 272, 283 (Ind.2000). This rule originally consisted of three elements: (1) an impact on the plaintiff; (2) that causes physical injury to the plaintiff; (3) that in turn causes the emotional distress. *Id.* This rule precluded recovery for the case in which a plaintiff experienced real mental stress in the absence of physical injury. *Id.* But our supreme court later modified the impact rule and held:

> When ... a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, ... such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson,* 579 N.E.2d 452, 456 (Ind.1991).

In *Conder v. Wood,* 716 N.E.2d 432 (Ind. 1999), our supreme court applied the modified impact rule for the first time since *Shuamber.* The plaintiff in *Conder* witnessed a truck hit her friend as the pair were walking across the street. In an effort to prevent the driver from running the truck's tires over her friend, the plaintiff pounded on the side of the truck to get the driver's attention. The plaintiff later sued the truck driver, claiming emotional damages as a result of witnessing her friend's death. The court held that the plaintiff sustained an "impact" when she pounded on the truck, sufficient to satisfy the direct impact element of the modified impact rule. *Id.* at 435.

Then, in *Groves v. Taylor,* 729 N.E.2d 569 (Ind.2000), where an eight-year-old girl witnessed the immediate aftermath of her little brother being struck and killed by a passing police vehicle, our supreme court held that a bystander in such a circumstance need not have sustained any physical impact at all to satisfy the rule. Quoting *Conder,* the court " 'recognized the diminished significance of contemporaneous physical injuries in identifying legitimate claims of emotional trauma from the mere spurious. Rather, 'direct impact' is properly understood as the requisite measure of 'direct involvement' in the incident giving rise to the emotional trauma.' " *Id.* at 572. The court explained further:

> In the present case, it is undisputed that the plaintiff did not suffer the kind of direct impact required by *Shuamber* to recover as a bystander for emotional distress. However, as the foregoing passage from *Conder* makes clear, the reason for requiring direct involvement is to be able to distinguish legitimate claims of emotional trauma from the mere spurious. The value of requiring "direct impact" is that it provides clear and unambiguous evidence that the plaintiff was so directly involved in the incident giving rise to the emotional trauma that it is unlikely that the claim is merely spurious.
>
> Given that the prevention of merely spurious claims is the rationale for the *Shuamber* rule, logic dictates that there may well be circumstances where, *while the plaintiff does not sustain a direct impact, the plaintiff is sufficiently directly involved in the incident* giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious.

*Id.* And the court held that:

> where the direct impact test is not met, a bystander may nevertheless establish "direct involvement" by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship

to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct.

*Id.* at 573.[2]

 In this case, Keim, Dr. Potter's patient, was mistakenly diagnosed with hepatitis C, a life-altering and deadly disease. As such, he was "directly involved" in the result of Dr. Potter's alleged negligence. *See Groves,* 729 N.E.2d at 573 (holding direct involvement in incident sufficient to satisfy modified impact rule). Keim was thirty-three years old when he was given the diagnosis; he was forced to modify his lifestyle significantly, to his detriment; and he was given only fifteen to twenty years to live. Keim's claimed emotional injuries are serious in nature and of a kind and extent normally expected to occur in a reasonable person faced with the same circumstances.[3] *See Shuamber,* 579 N.E.2d at 456.

Dr. Potter contends that the holding in *Groves,* requiring direct involvement in an incident giving rise to emotional trauma, applies only to claims brought by *bystanders.* As such, Dr. Potter maintains that Keim did not sustain an "impact" sufficient to meet the requirements of the modified impact rule set out in *Shuamber.* But we do not see the logic in allowing a witness to claim emotional damages while precluding an actual victim of negligence from claiming such damages, where both plaintiffs have suffered a direct involvement reasonably expected to result in emotional injury.

We hold that where, as here, a patient claims emotional damages as a result of alleged medical malpractice, he is sufficiently "directly involved" to satisfy the modified impact rule.[4] Keim is entitled to present his emotional damages claim to a trier of fact. The trial court erred when it granted Dr. Potter's motion for partial summary judgment. We reverse that order and remand for further proceedings.

Reversed and remanded.

DARDEN and VAIDIK, JJ., concur.

---

2. Recently, this court held that the modified impact rule was satisfied where plaintiffs claimed emotional distress after discovering that their son's cremated remains were missing twelve years after his death. *Blackwell v. Dykes Funeral Homes, Inc.,* 771 N.E.2d 692 (Ind.Ct.App.2002), *trans. pending.* Relying on our supreme court's "persuasive and compelling" reasoning in *Groves,* we concluded that the Blackwells were "sufficiently and directly involved in the incident" and that "[w]hile there was no physical impact, [they] have alleged serious emotional trauma and it is of a kind that a reasonable person would experience." *Id.* at 697.

3. We note that, in addition to emotional damages, Keim sought damages for losing custody of his children. But Keim does not raise that issue on appeal. As such, the issue is waived.

4. Keim also contends, in the alternative, that the impact rule should not apply to medical malpractice victims seeking emotional damages. But we need not go that far. Instead, we have determined that patients who bring medical malpractice claims satisfy the requirements of the modified impact rule.