Joan KETCHMARK and Paul
Ketchmark, Appellants–
Plaintiffs,

v.

NORTHERN INDIANA PUBLIC
SERVICE COMPANY,
Appellee–Defendant.

No. 64A05–0402–CV–66.

Court of Appeals of Indiana.

Dec. 1, 2004.

Richard M. Davis, Kevin G. Kerr, Valparaiso, IN, Attorneys for Appellants.

Paul A. Rake, Greg A. Crisman, Mattew S. Ver Steeg, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

In this interlocutory appeal, Paul and Joan Ketchmark appeal the grant of summary judgment to Northern Indiana Public Service Company ("NIPSCO") on the Ketchmarks' claim of negligent infliction of emotional distress arising from a gas explosion at the Ketchmarks' home shortly after NIPSCO employees serviced the home's gas meter and pipes. Because Indiana does not allow recovery for negligent infliction of emotional distress arising from only the damage or loss of property, we affirm.

### Facts and Procedural History

In early November 2000, NIPSCO employees went to the Ketchmarks' home of forty-five years to repair the residence's gas meter and pipes. The employees shut off the gas supply in two locations—at the home's meter and at a valve away from the home by the curb—and proceeded to fix some of the Ketchmarks' pipes. As the workers were performing the repairs, the Ketchmarks noticed a strong odor of gas and complained to a NIPSCO employee present at the house. That employee informed the Ketchmarks that the purging of the gas lines probably created the odor and advised the Ketchmarks to open their windows to ventilate the house. A second NIPSCO employee, Martin Packham, arrived to relight the Ketchmarks' range and water heater. Packham detected the pres-

ence of gas in the basement of the home, which he attributed to some of the gas odor from the outside leaking into the basement. Because the outside pipes had been replaced and had been in poor condition, Packham theorized that the pipe inside the basement might also need replacement. Apparently, Packham was unable or unwilling to replace the basement pipe, but Packham gave Paul an appropriate pipe so that Paul, who had many years of experience in home repairs, could replace the pipe himself. Shortly after Paul replaced the pipe, the Ketchmarks left their home to go out to dinner with some friends. While they were at dinner a natural gas explosion destroyed their house and all its contents.

As the Ketchmarks were driving back to their home after dinner, they noticed that their street was barricaded by emergency vehicles. They exited their car and were approached by a neighbor who informed them of the incident. Joan became distraught and had to rest in a passerby's vehicle.

The Ketchmarks filed a multi-count complaint against NIPSCO. alleging, among other things, negligent infliction of emotional distress. NIPSCO filed a motion for summary judgment on this count, which the trial court granted. The Ketchmarks moved the trial court to certify this issue for interlocutory appeal. The trial court certified the issue, and this Court accepted jurisdiction.

### Discussion and Decision

The sole issue on appeal is whether the trial court erred in granting summary judgment to NIPSCO on the Ketchmarks' claim of negligent infliction of emotional distress for loss or damage to their property. Both parties agree that there was no impact to the plaintiffs' persons, that the plaintiffs were not the bystanders of an accident with impact on the person of another, and that there was no threat of injury to either of the plaintiffs' persons. Rather, it is undisputed that the only impact was to property. Before resolving this issue, we briefly review the history of the tort of negligent infliction of emotional distress in Indiana.

■ Indiana has allowed recovery for negligent infliction of emotional distress in those circumstances involving an impact to the plaintiff's person under what has been named the "direct impact" rule or its progeny, the "modified impact" rule. The "direct impact" rule has three elements "(1) an impact on the plaintiff; (2) that causes physical injury to the plaintiff; (3) that in turn causes the emotional distress." *Alexander v. Scheid*, 726 N.E.2d 272, 283 (Ind. 2000). The "direct impact" rule "precluded recovery for the case in which a plaintiff experienced real mental stress in the absence of a physical injury." *Id.* In 1991, the Indiana Supreme Court expanded the "direct impact" rule, thus creating what has been known as the "modified impact" rule, in *Shuamber v. Henderson*, 579 N.E.2d 452 (Ind.1991), and in so doing held:

> When ... a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Id.* at 456. The "modified impact" rule has been applied in several recent cases. *See, e.g., Bader v. Johnson*, 732 N.E.2d 1212 (Ind.2000) (plaintiff's pregnancy and resulting physical changes); *Alexander*, 726 N.E.2d 272 (destruction of plaintiff's

healthy tissue by a cancerous tumor); *Conder v. Wood*, 716 N.E.2d 432 (Ind.1999) (plaintiff's pounding on side of truck found to be sufficient "impact" as truck was running over friend); *Shuamber*, 579 N.E.2d 452 (plaintiffs involved in a car accident in which their son/brother was killed); *Dollar Inn, Inc. v. Slone*, 695 N.E.2d 185 (Ind.Ct. App.1998) (plaintiff stuck by hypodermic needle embedded in roll of toilet paper), *trans. denied.*

Indiana has also allowed for damages for negligent infliction of emotional distress when a plaintiff witnesses an injury to the person of a close relative without any physical impact on the plaintiff—the "bystander direct involvement test." In *Groves v. Taylor*, 729 N.E.2d 569 (Ind. 2000), the plaintiff witnessed her brother being hit by a car. The court held:

> [W]here the direct impact test is not met, a bystander may nevertheless establish "direct involvement" by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortuous conduct.

*Id.* at 573.

Recently, Indiana has further expanded the negligent infliction of emotional distress jurisprudence by allowing recovery or by refusing to dismiss the claim for failure to state a claim under the "direct involvement" rationale in three cases— where human remains were lost, *see Blackwell v. Dykes Funeral Homes, Inc.*, 771 N.E.2d 692 (Ind.Ct.App.2002), *trans. denied*; where an individual was mistakenly diagnosed with Hepatitis C, *see Keim v. Potter*, 783 N.E.2d 731, 735 (Ind.Ct.App. 2003) ("We hold that where, as here, a patient claims emotional damages as a result of alleged medical malpractice, he is sufficiently 'directly involved' to satisfy the modified impact rule."); and where in the aftermath of the attacks on the World Trade Center a couple was directly involved and suffered a serious emotional trauma when the aircraft they were on had an unruly male passenger who was disruptive and shouting threats such as "September 11th" and "World Trade Center" during the flight and the airline had notice before he boarded that he was, at a minimum, unstable. *See Delta Airlines v. Cook*, 816 N.E.2d 448 (Ind.Ct.App.2004), *reh'g pending.*

■ Each of the rules of recovery for negligent infliction of emotional distress requires impact upon or the threat of injury to a person—either the plaintiff herself or her loved one.[1] The Ketchmarks construe the negligent infliction of emotional distress precedent cases to require only "direct involvement" without the requirement of impact upon or the threat of injury to a person. This argument misses the mark.

We have generally refused to allow these damages where there has been only an economic loss. In *Comfax Corp. v. North American Van Lines, Inc.*, 587

---

**1.** The Ketchmarks direct us to *Blackwell* for the proposition that we have already extended negligent infliction of emotional distress to a situation involving purely a property interest. *Blackwell* involved a parents' lawsuit filed against a funeral home for losing the cremated remains of their son. *Blackwell* did not discuss the issue of whether and to what extent human remains were property. To the extent that human remains can be categorized as property, they are a unique type of property primarily because of the "symbolic importance that the bodies of the dead have for the hearts and minds of the living." *Janicki v. Hosp. of St. Raphael*, 46 Conn.Supp. 204, 744 A.2d 963, 964 (1999). We cannot equate the loss of human remains with the loss of other property.

N.E.2d 118, 127 (Ind.Ct.App.1992), we concluded that an economic loss and its resulting emotional trauma is not "sufficiently serious" to warrant the imposition of liability. While we recognized that an economic loss may cause emotional distress, the loss of a loved one cannot be compared to the loss of an investment. Even if a person is directly involved in a property loss, we decline to extend liability for negligent infliction of emotional distress to those cases involving purely property loss and the concomitant emotional distress caused by that loss.

We are not alone in generally refusing to allow recovery for negligent infliction of emotional distress arising out of property loss. Several cases from other jurisdictions establish that there is no recovery for negligent infliction of emotional distress arising from only the damage or loss of property.[2] *See Roman v. Carroll,* 127 Ariz. 398, 621 P.2d 307, 308 (Ct.App.1980) ("Damages are not recoverable for negligent infliction of emotional distress from witnessing injury to property."); *Sher v. Leiderman,* 181 Cal.App.3d 867, 226 Cal. Rptr. 698, 707 (1986) ("No California case has allowed recovery for emotional distress arising solely out of property damage, absent a threshold showing of some preexisting relationship or intentional tort."); *Gen. Accident Ins. Co. v. Black & Decker (U.S.), Inc.,* 266 A.D.2d 918, 697 N.Y.S.2d 420, 420 (N.Y.App.Div.1999) ("[Plaintiffs'] children watched the fire from across the street and were never in any physical danger. There is no cause of action for 'emotional distress caused by the

destruction of one's property [ . . . ] nor for emotional distress caused by the observation of damage to one's property.'"); *Pacher v. Invisible Fence of Dayton,* 154 Ohio App.3d 744, 798 N.E.2d 1121, 1125 (2003) ("Ohio does not recognize a cause of action for serious emotional distress caused by injury to property."); *McMeakin v. Roofing & Sheet Metal Supply Co. of Tulsa,* 807 P.2d 288, 290 (Okla.Ct.App. 1990) ("We hold that no cause of action may be had for negligent infliction of emotional distress due to property damage."); *Rabideau v. City of Racine,* 243 Wis.2d 486, 627 N.W.2d 795, 801–02 (2001) (noting that "under Wisconsin's formulation of tort law, 'it is unlikely that a plaintiff could ever recover for the emotional distress caused by negligent damage to his or her property'" and reasoning that allowing recovery would enter a field that has no sensible or just stopping point, that there are concerns relating to identifying genuine claims of emotional distress, and that tortfeasors should be charged with financial burdens that are fair). While we certainly sympathize with the tremendous loss that the Ketchmarks have suffered as a result of this explosion—heirlooms, photos, and a long-standing family home—the cause of action for negligent infliction of emotional distress does not extend to the loss of property because of the obvious and substantial difference between property and people.

Affirmed.

RILEY, J., concurs.

CRONE, J., dissents with separate opinion.

---

2. Our research uncovered only one jurisdiction that has held that "an individual's interest in freedom from negligent infliction of serious mental distress is entitled to independent legal protection." *Campbell v. Animal Quarantine Station,* 63 Haw. 557, 632 P.2d 1066, 1068 (1981). In so holding, the court noted, "In making such recognition, we d[o] not distinguish between mental distress suffered as a consequence of witnessing injury to another and that resulting from the destruction of one's own property.... [S]erious mental harm can be inflicted when a person endures negligently inflicted property damage." *Id.*

CRONE, Judge, dissenting.

I respectfully dissent from the majority's decision to deny recovery as a matter of law for the negligent infliction of emotional distress arising from damage to or loss of property. The so-called "impact rule" is a legal fiction that was created to protect juries from the difficult task of evaluating claims in which the alleged damages might be fraudulent, i.e., emotional trauma. In reality, the rule has blocked the pursuit of many otherwise valid claims for want of a physical injury.

When the "impact rule" was adopted in the nineteenth century, emotional trauma was a much less widely accepted and recognized element of compensable damages. For example, in *Kalen v. Terre Haute & Indianapolis Railroad Company*, 18 Ind. App. 202, 47 N.E. 694 (1897), the court denied recovery for "great mental pain and anxiety" suffered by a passenger in a buggy drawn by a horse frightened at a railroad crossing:

We think it cannot properly be said that such injuries are imaginary or conjectural, or that the sufferings described are not real. Nor does it seem to us proper to say that they cannot be disregarded as directly and naturally resulting from the act of the defendant as their proximate cause.

But not every injurious effect of wrong can form the basis of damages. Many ill consequences follow from wrongs as proximate effects for which the law cannot afford redress, because of the inadequacy of the methods and means of courts to reach just and adequate results with sufficient certainty.

The evidence of such injuries is so much within the control of the person claiming to be so injured, and there is so little opportunity for subjecting the fact to the tests which may be and are applied in courts of justice for the ascertainment of the truth to the appreciation of the triors, that besides the encouragement that would be given to increase of litigation, there would be much danger of frequent injustice in allowing such claims to be presented for trial.

*Id.* at 213, 47 N.E. at 697–98.

After a century of such bright-line legal fiction, Indiana courts have undercut the "impact rule" to the point that a plaintiff has a cognizable claim for damages caused by the negligence of another if the claimant is "directly involved" and sustains serious emotional trauma and if the incident is sufficiently severe as can reasonably be expected to cause serious emotional trauma in a reasonable person. *See Groves v. Taylor*, 729 N.E.2d 569, 573 (Ind.2000). As the majority acknowledges here, the Ketchmarks have met those criteria.

By invoking the last vestiges of the impact rule—that the plaintiff or "someone related" to the plaintiff must be "impacted or threatened with impact"—we are again denying access to our courts to otherwise legitimate claimants. The continuing effort to articulate an evolving definition of what remains of the "impact rule" has resulted in the anomalous situation in this state of a claim being recognized for mental anguish suffered by parents resulting from the loss of their deceased child's remains, *see Blackwell*, 771 N.E.2d 692, but the denial of a parent's claim for emotional trauma resulting from the loss of a live child, *see Ritchhart v. Indpls. Pub. Sch.*, 812 N.E.2d 189 (Ind.Ct.App.2004), *trans. pending*.

I believe that the time has come to clear the decks of the so-called "impact rule" and to allow the tort of negligent infliction of emotional distress to stand on its own inherent elements. If we trust jurors to determine whether a criminal defendant should live or die, then we should consider them capable of deciding whether a claimant's serious emotional trauma is both le-

gitimate and reasonable, without imposing any artificial impediment to recovery.

Compare the paternalistic sentiments uttered by the *Kalen* court in 1897 with those expressed by the Supreme Court of Hawaii in *Rodrigues v. State*, 52 Haw. 156, 472 P.2d 509 (1970), in which the court permitted the plaintiffs to pursue their claim for negligent infliction of emotional distress resulting from the flooding of their new home before they could occupy it:

> Courts which have administered claims of mental distress incident to an independent cause of action are just as competent to administer such claims when they are raised as an independent ground for damages. In judging the genuineness of a claim of mental distress, courts and juries may look to 'the quality and genuineness of proof and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out dishonest claims.' In cases other than where proof of mental distress is of a medically significant nature, the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case.

*Id.* at 519–20 (citations omitted).[1]

I agree with the Supreme Court of Hawaii's enlightened rationale, and I see no legally or logically defensible reason why the Ketchmarks should not be able to seek recovery for the emotional trauma resulting from the complete destruction of the home in which they had lived for nearly half a century. Accordingly, I would reverse the trial court's grant of summary judgment in NIPSCO's favor and remand for further proceedings.

---

1. In response to a dissenting opinion, the *Rodrigues* majority stated,

> Against the holding it is said that juries are now 'without restraint' and that the law should not encourage 'attachment to material possession' 'in an age when man has surrounded himself with a veritable plethora of material possessions.' Indeed, our decision does shift a part of the burden of administering claims of mental distress inordinately assumed by the courts to juries. As in other mental tort cases, the jury, representing a cross section of the community is in a better position to consider under what particular circumstances society should or should not recognize recovery for mental distress. We have not decided that a value should be put on 'attachment to material possessions' but that that decision is properly a function which should be shared with the jury. Moreover, the jury is no less 'without restraint' under the 'reasonable man' standard we have established than in innumerable other negligence cases where a 'reasonable man' standard and general tort principles are applied and where the preliminary issue of whether the case presents questions on which reasonable men would disagree is for the court.
>
> *Rodrigues*, 472 P.2d at 521 n. 8.