**Sharon S. YORK, Shawn D. York, Steven M. York, Tina M. Baum, and Summer R. Noland, Appellants–Plaintiffs,**

v.

**Donald FREDRICK, Michael Carnahan, Donald Gilmore, Robert Evans, Edwardsport Town Cemetery[1] Association, Duesterberg–Fredrick Funeral Home, Inc., Sexton Wilbert Corporation, and Carnahan Farms Inc., Appellees–Defendants.**

No. 42A01–1008–PL–420.

Court of Appeals of Indiana.

April 25, 2011.

1. We note that although the Edwardsport Town Cemetery Association ("the ETCA") was a party at the trial level and filed an appearance with this court, the ETCA did not file an Appellant's Brief. However, pursuant to Indiana Appellate Rule 17(A), "[a] party of record in the trial court … shall be a party on appeal."

Steven K. Deig, Michelle A. Cox, Law Offices of Steven K. Deig, LLC, Evansville, IN, Attorneys for Appellants.

Angela L. Freel, Joseph H. Langerak, James B. Godbold, Rudolph, Fine, Porter & Johnson, LLP, Evansville, IN, Attorneys for Appellees Donald Fredrick and Duesterberg–Fredrick Funeral Home.

Mark D. Hassler, Hunt, Hassler & Lorenz LLP, Terre Haute, IN, Attorney for Appellees Michael Carnahan, Donald Gilmore, and Carnahan Farms, Inc.

Danny E. Glass, Adam S. Glass, Fine & Hatfield, P.C., Evansville, IN, Attorneys for Appellees Robert Evans and Sexton Wilbert Corporation.

## OPINION

KIRSCH, Judge.

Sharon S. York ("Sharon"), Shawn D. York ("Shawn"), Steven M. York ("Steven"), Tina M. Baum ("Tina"), and Summer R. Noland ("Summer") (collectively "the Yorks") appeal the trial court's orders dismissing their claim of negligent infliction of emotional distress and granting summary judgment in favor of Donald Fredrick ("Fredrick"), Michael Carnahan ("Carnahan"), Donald Gilmore ("Gilmore"), Robert Evans ("Evans"), Edwardsport Town Cemetery Association ("ETCA"), Duesterberg–Fredrick Funeral Home, Inc. ("Funeral Home"), Sexton Wilbert Corporation ("Sexton Wilbert"), and Carnahan Farms, Inc. (collectively "the Defendants"), which disposed of their remaining claims. They raise the following restated issues:

I. Whether the trial court erred in dismissing the Yorks' claim of negligent infliction of emotional distress pursuant to Indiana Trial Rule 12(B)(6);

II. Whether the trial court erred when it granted summary judgment in favor of the Defendants as to the Yorks' claims of intentional infliction of emotional distress, negligence/gross negligence, and breach of fiduciary duty; and

III. Whether the trial court abused its discretion when it denied the Yorks' motion to strike the Supplement to Fact and Reply Brief filed by Evans and Sexton Wilbert and their Motion to Reconsider Granting Leave to File Supplement to Facts and Reply Brief.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Doris Johnson ("Johnson") died on August 13, 2007 and was buried on August 16,

2007. She had pre-planned her funeral arrangements with the predecessor to the Funeral Home. Prior to Johnson's death, all of the Yorks[2] had little to no contact with Fredrick, the funeral director, or the Funeral Home. Sharon and Shawn had no contact with Fredrick before Johnson passed away, and the remaining Yorks had minimal contact with Fredrick through their aunt's funeral, which was prior to Johnson's death. After her death, contact between the Yorks and Fredrick and the Funeral Home remained limited. The day Johnson died, Fredrick met with Sharon, Summer, and Tina to discuss Johnson's funeral. Shawn and Steven did not speak with Fredrick until either the viewing or the funeral.

Following Johnson's funeral and graveside service, the family left the cemetery. Fredrick directed the interment of Johnson. A vault was delivered to the cemetery by Sexton Wilbert in an undamaged condition. When an attempt was made to lower the casket into the vault, it was discovered that the casket was too large and would not fit into the vault. There were four individuals present at that time: Evans, Carnahan, Gilmore, and Fredrick. All four individuals pushed and applied pressure to the corners of the casket to force it into the vault at the direction of Fredrick. Once the casket was in the vault, the vault was bulging, and a seal was difficult to obtain. Boards and straps were used in an attempt to eliminate the bulge and get the vault sealed. Ultimately, the vault was interred without being completely sealed.

On approximately August 27, 2007, the Yorks were notified by an anonymous caller that there had been a problem during the burial of Johnson. Several family members contacted Fredrick to get Johnson's vault exhumed. The exhumation occurred on August 30, 2007. The Yorks were not responsible for the cost of the exhumation, replacement casket, and replacement vault. Tina, Summer, and Shawn chose to be present at the exhumation. Shawn noticed damage to the casket and vault, but did not see any dirt or water in Johnson's casket. Summer also did not see any damage to Johnson's remains. Tina did see some dampness and dirt inside of the casket, but did not notice any damage to her grandmother's remains. At the request of the Yorks, a video recording and photographs were taken of the exhumation process, vault, casket, and remains. The photographs were stored on Summer's laptop, which she took to a family reunion and set up to play the photographs in a slideshow for family members to view. The Yorks also gathered to voluntarily view the video recording. For Steven and Sharon, this was their first opportunity to view the vault, casket, and Johnson's remains, and they did not notice any damage to Johnson's remains.

The Yorks all contend to have suffered emotional distress as a result of this incident. Steven stated he suffered from crying spells, distrust of others, shock, loss of appetite, irritability, decreased desire to participate in activities, and embarrassment once rumors started in their small community. Shawn reported that he cried a lot after the incident, lost sleep, had bad dreams, was moody, and suffered from headaches and a loss of appetite. Tina said she cried a lot, had trouble sleeping, worried, was irritable, and had a distrust of others. Summer suffered from crying spells, irritability, episodes of worry, and a distrust of others. Sharon reported that

2. Sharon was the daughter of Johnson. Shawn, Steven, Tina, and Summer were Johnson's grandchildren.

she suffered from crying spells and worrisome thoughts regarding the condition of Johnson's remains. None of the Yorks sought any medical or other professional treatment for their alleged emotional distress.

On July, 17, 2008, the Yorks filed an amended complaint, alleging the following: Count I against Fredrick and the Funeral Home for negligence, gross negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and breach of fiduciary duty; Count II against Carnahan, Gilmore, and ETCA for negligence, gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress; and Count III against Evans and Sexton Wilbert for negligence, gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. A partial motion to dismiss was filed and joined by all of the Defendants. On December 29, 2008, the trial court issued an order granting the partial motion to dismiss of all the Defendants as to the claims of negligent infliction of emotional distress pursuant to Indiana Trial Rule 12(B)(6). A motion for summary judgment for the remaining allegations was filed and joined by all of the Defendants. The Yorks filed a response to this motion, and Evans and Sexton Wilbert filed a reply brief to this response and a supplement to the facts. The Yorks filed a motion to strike both filings by Evans and Sexton Wilbert, which was denied by the trial court. On July 23, 2010, the trial court issued an order granting summary judgment in favor of the Defendants on all of the remaining allegations. The Yorks now appeal.

### DISCUSSION AND DECISION

### I. Motion to Dismiss

■ A motion to dismiss for failure to state a claim tests the legal sufficiency of the claims, not the facts supporting it. *Droscha v. Shepherd,* 931 N.E.2d 882, 887 (Ind.Ct.App.2010). Thus, our review of a trial court's grant or denial of a motion based on Indiana Trial Rule 12(B)(6) is de novo. *Id.* When reviewing a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. *Id.* A complaint may not be dismissed for failure to state a claim upon which relief can be granted unless it is clear on the face of the complaint that the complaining party is not entitled to relief. *Id.* All allegations must be accepted as true, and it is the appellate court's duty to determine whether the underlying complaint states " 'any set of allegations upon which the court below could have granted relief.' " *Stoffel v. Daniels,* 908 N.E.2d 1260, 1266 (Ind.Ct.App.2009) (quoting *Watson v. Auto Advisors, Inc.,* 822 N.E.2d 1017, 1023 (Ind.Ct.App.2005), *trans. denied* ). Dismissal of a complaint under Trial Rule 12(B)(6) is disfavored generally because such motions undermine the policy of deciding causes of action on their merits. *Id.* at 1266–67.

■ The Yorks argue that the trial court erred in granting the Defendants' motion to dismiss pursuant to Trial Rule 12(B)(6) as to their allegations of negligent infliction of emotional distress. They contend that their amended complaint sufficiently alleged a claim for relief for negligent infliction of emotional distress under Indiana's bystander rule. The Yorks contend that the bystander rule was expanded by this court in *Blackwell v. Dykes Funeral Homes, Inc.,* 771 N.E.2d 692 (Ind.Ct. App.2002), *trans. denied* and that the facts of this case squarely fit within this expansion because the incident was very emotional and sacred since it involved the burial, handling, and disinterment of a human and loved one.

Our Supreme Court established the bystander rule in *Groves v. Taylor*, 729 N.E.2d 569 (Ind.2000). Pursuant to that case, in the absence of a direct impact, a bystander may still establish "direct involvement" by proving that "the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild or sibling caused by the defendant's negligent or otherwise [tortious] conduct." *Id.* at 573. Therefore, this test for bystander recovery requires a specific relationship between the parties and proximity to the scene. *Smith v. Toney*, 862 N.E.2d 656, 658 (Ind.2007). Both the relationship and proximity requirements under *Groves* are issues of law. *Id.* The proximity requirement is both a matter of time and circumstances. *Id.* at 662. "The scene viewed by the claimant must be essentially as it was at the time of the incident, the victim must be in essentially the same condition as immediately following the incident, and the claimant must not have been informed of the incident before coming upon the scene." *Id.* at 663.

Here, the Yorks' amended complaint established that they were not present at the time Johnson's casket was damaged, forced into the vault, and then buried without the vault being properly sealed. Further, Johnson was buried on August 16, 2007, but the exhumation did not occur until August 30, 2007. Therefore, the Yorks did not arrive on the scene shortly after the injury occurred. Additionally, the amended complaint established that the Yorks learned of the alleged injury before ever witnessing any such injury. Because the Yorks' amended complaint did not allege that they were directly involved in the alleged injury, recovery under the bystander rule requires that the plaintiff witness the death or severe injury of a loved one. *Groves,* 729 N.E.2d at 573. The Yorks did not allege that they witnessed Johnson's death or any severe injury to her; the amended complaint does not allege any injury to Johnson's remains. Therefore, as a matter of law, the amended complaint failed to state a claim for negligent infliction of emotional distress because the facts alleged in the amended complaint, if taken as true, were insufficient to recover under the bystander rule.

In *Blackwell,* this court applied our Supreme Court's holding in *Groves* to a claim for negligent infliction of emotional distress arising from the loss of a decedent's remains. There, the twenty-year-old son of the plaintiffs committed suicide, and his body was taken to the funeral home, where it was later cremated. *Blackwell,* 771 N.E.2d at 693–94. The parents arranged for their son's remains to be placed in an urn and entombed in a glass niche at a nearby cemetery. *Id.* at 694. A memorial service was held at the funeral home, and the parents left the remains there to be transferred to the cemetery. *Id.* Several days later, the funeral home called the parents to inform them that the urn was too large to fit in the niche they had selected. *Id.* The parents told the funeral home it could choose a comparable replacement urn. *Id.* When the parents subsequently visited the cemetery, they could not view the urn because it would only appear as a shadow through dark amber glass. *Id.* Over eleven years after their son's death, the parents requested that the urn be moved closer to the front of the niche, and as a result of this request, it was discovered that their son's remains were not in the niche and had been lost. *Id.* The parents filed a complaint against the funeral home and the cemetery alleging a claim for negligent infliction of emotional distress, among others, and summary judgment was granted

as to the negligent infliction of emotional distress claim. *Id.*

On appeal, this court reversed the trial court's order as to the parents' negligent infliction of emotional distress claim against the funeral home. *Id.* at 697. We noted that the parents, as bystanders, alleged that they suffered emotional distress from the negligent conduct involving a close relative's remains. *Id.* The *Blackwell* court stated:

> [O]ur supreme court's reasoning in *Groves* is persuasive and compelling. While there was no physical impact, the Blackwells have alleged serious emotional trauma and it is of a kind that a reasonable person would experience.

> In our view, this is the type of claim that our supreme court spoke of in *Groves* where the plaintiff is sufficiently and directly involved in the incident giving rise to the emotional trauma. The rationale underlying the impact rule that prevents concocted claims of mental anguish, is not implicated here. We are satisfied that the evidence designated to the trial court in this case is such that the alleged mental anguish suffered by the Blackwells is not likely speculative, exaggerated, fictitious, or unforeseeable. Provided they can prevail on their negligence claim, we see no reason why the Blackwells should not be able to claim damages for emotional distress.

*Id.*[3]

We find the present case to be distinguishable from *Blackwell.* In *Blackwell,* this court looked to the underlying rationale of *Groves* and found the parents'

claim to be one where the plaintiff was sufficiently and directly involved in the occurrence that caused the emotional trauma because the alleged emotional distress suffered by the parents was not likely "speculative, exaggerated, fictitious, or unforeseeable." *Id.* That case involved a truly egregious situation where the funeral home permanently lost the remains of the son of the plaintiffs, who had been directly involved with the funeral arrangements, and which loss was not discovered for over eleven years. Here, none of the Yorks was involved with making the funeral arrangements for Johnson and had little, if any, contact with the Defendants. The upset experienced by the Yorks upon learning that Johnson's casket and vault had been damaged during the burial does not rise to the same level of egregiousness as the situation in *Blackwell.* As all of the Yorks testified, the remains were not lost and there was no damage to Johnson's remains. Further, as previously stated, they were not present during the burial, and they voluntarily exposed themselves to the exhumation by either being present when it occurred or by later viewing pictures and video taken when it occurred. We therefore conclude that the present case is distinguishable from *Blackwell.* The trial court did not err in dismissing the Yorks' claims of negligent infliction of emotional distress for failure to state a claim.

## II. Summary Judgment

The Yorks argue that the trial court erred when it granted summary judgment

---

**3.** The Defendants cite dicta in the ruling of the district court of the Southern District of Indiana in *Luttrell v. McDonald's Corp.,* 2004 WL 2750244 (S.D.Ind.2004) disavowing the holding in *Blackwell.* We respectfully disagree with the district court's observations and, particularly, with its statement that *Blackwell* "would have the potential to open a floodgate of litigation...." *Id.* at *5. Indeed, we would note that its dire prediction has not been borne out—not only have the intervening eight years not opened any floodgates, they have not produced a single appellate case in which parents have suffered the trauma of the negligent loss of their child's remains.

in favor of the Defendants, which disposed of their remaining claims.[4] When reviewing a grant or denial of summary judgment, we apply the same standard as the trial court: summary judgment is only appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Stowers v. Clinton Cent. Sch. Corp.*, 855 N.E.2d 739, 745 (Ind. Ct.App.2006), *trans. denied* (2007). We may not look beyond the evidence that the parties specifically designated and must accept as true the facts alleged by the non-moving party. *Hill v. Bolinger*, 881 N.E.2d 92, 94 (Ind.Ct.App.2008), *trans. denied.* We construe all evidence in favor of the non-moving party and resolve all doubts against the moving party. *Allen v. City of Hammond*, 879 N.E.2d 644, 646 (Ind.Ct.App.2008), *trans. denied.*

### A. Intentional Infliction of Emotional Distress

The Yorks contend that the trial court erred in granting summary judgment in favor of the Defendants with regard to their claims of intentional infliction of emotional distress because issues of material fact exist as to whether the Defendants' conduct met the elements of the tort. "The tort of intentional infliction of emotional distress was first recognized as a separate cause of action without the need for an accompanying tort in *Cullison v.*

*Medley*, 570 N.E.2d 27 (Ind.1991)." *Lachenman v. Stice*, 838 N.E.2d 451, 456 (Ind.Ct.App.2005), *trans. denied* (2006). In *Cullison*, our Supreme Court defined the tort of intentional infliction of emotional distress as: "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1264 (Ind.Ct.App.2009). " 'It is the intent to harm the plaintiff emotionally which constitutes the basis for the tort of intentional infliction of emotional distress.' " *Id.* (quoting *Lachenman*, 838 N.E.2d at 456). The elements of the tort are that the defendant: (1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another. *Id.* The requirements to prove this tort are rigorous. *Id.* Our cases have cited with approval the following comment:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or by a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outra-

4. The Yorks raise an issue that summary judgment should not have been granted in favor of Evans and Sexton Wilbert because they only argued that the Yorks failed to produce sufficient evidence on one or more elements of their claim and failed to properly designate evidence to support their motion for summary judgment. *Appellants' Br.* at 10–13. We note that any alleged defects in Evans and Sexton Wilbert's summary judgment motion were cured when the trial court allowed them to file a supplement to the facts, which added citations to the designated evidence, and a reply to the Yorks' response to their summary judgment motion. Further, when another party has moved for summary judgment, the trial court may grant summary judgment for any other party upon the issues raised by the motion even if a motion was not filed by such party. Ind. Appellate Rule 56(B). Therefore, as all of the parties filed motions for summary judgment as to the same issues raised in Evans and Sexton Wilbert's motion, the trial court could grant summary judgment to them as to the issues raised in the other parties' motions.

geous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

Restatement (Second) of Torts § 46, cmt. D. "Intentional infliction of emotional distress is found where conduct exceeds all bounds usually tolerated by a decent society and causes mental distress of a very serious kind." *Lachenman*, 838 N.E.2d at 457. In the appropriate case, the question can be decided as a matter of law. *Id.*

Here, considering the facts in the light most favorable to the Yorks as the non-moving party, we can conclude as a matter of law that the Defendants' actions did not constitute "outrageous" behavior as contemplated by the narrow definition adopted from the Restatement. In other words, none of the designated facts show that the Defendants' conduct was so extreme in degree as to go beyond all possible bounds of decency and should be regarded as atrocious and utterly intolerable in a civilized society. *See Lindsey*, 898 N.E.2d at 1264–65. Moreover, there is also nothing in the record which would support a reasonable inference that the Defendants intended to cause emotional distress to the Yorks by their behavior. *See Cullison*, 570 N.E.2d at 31 (establishing that intent to cause harm to plaintiff constitutes basis for the tort of intentional infliction of emotional distress). Therefore, we conclude that the trial court did not err in granting summary judgment to the Defendants upon the Yorks' claim of intentional infliction of emotional distress.

### B. Negligence

■ The Yorks argue that it was error for the trial court to grant summary judgment in favor of the Defendants on the Yorks' claims of negligence because they contend that the Defendants did not move to have the negligence claims resolved on summary judgment. In order to recover for negligence, a plaintiff must establish: (1) a duty owed to the plaintiff by the defendant; (2) breach of that duty; and (3) an injury proximately caused by the breach of that duty. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind.2010). In this case, the only damages alleged by the Yorks against the Defendants are damages due to emotional distress. *See Appellants' App.* at 46–54. None of the Yorks asserted a claim for damages due to personal injury or property damage. *See id.* In fact, the only property at issue was Johnson's remains, and all of the Yorks agreed that the remains were not harmed. Any claim of negligence resulting in damages of emotional distress had already been resolved when the trial court granted the Defendants' collective motion to dismiss the Yorks' claims of negligent infliction of emotional distress. The trial court did not err when it granted summary judgment as to the Yorks' negligence claims.

### C. Gross Negligence

■ The Yorks contend that the trial court erred in granting summary judgment as to their claims of gross negligence because they allege that there is a genuine issue of material fact that cannot be resolved on summary judgment "regarding the [D]efendants' conduct rising to the level of gross negligence." *Appellants' Br.* at 21. Gross negligence is defined as "[a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary dam-

ages." Black's Law Dictionary 1134 (9th ed.2009). Therefore, a finding of gross negligence is predicated on a showing of negligence, as it is the intentional failure to perform a duty in reckless disregard of the consequences. *See Stump v. Commercial Union,* 601 N.E.2d 327, 332 n. 5 (Ind.1992) (accepting for purposes of certified question the definition of gross negligence as "the intentional failure to perform a duty in reckless disregard of the consequences as affecting the life or property of another"), *superseded by statute on other grounds.* A plaintiff must show there was a duty and an intentional breach of that duty in order to establish gross negligence. Consequently, the trial court's ruling upon the Yorks' claims for negligent infliction of emotional distress also resolved and barred any further claim for gross negligence. The trial court did not err when it granted summary judgment in favor of the Defendants as to the Yorks' claims of gross negligence.

### D. Breach of Fiduciary Relationship

 The Yorks assert that it was error for the trial court to grant summary judgment in favor of Fredrick and the Funeral Home on the Yorks' claim of breach of fiduciary duty, arguing that there was a genuine issue of material fact as to whether Fredrick and the Funeral Home breached their fiduciary duty to the Yorks. A claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary relationship; (2) a breach of the duty owed by the fiduciary to the beneficiary; and (3) harm to the beneficiary. *Farmers Elevator Co. of Oakville, Inc. v. Hamilton,* 926 N.E.2d 68, 79 (Ind.Ct.App.2010), *trans. denied.* Breach of fiduciary duty is a tort claim for injury to personal property. *City of E. Chicago, Ind. v. E. Chicago Second Century, Inc.,* 908 N.E.2d 611, 618 (Ind.2009). A fiduciary relationship does not exist un-less there is a relationship of trust and confidence between the parties. *Geiger & Peters, Inc. v. Berghoff,* 854 N.E.2d 842, 852 (Ind.Ct.App.2006) (citing *Paulson v. Centier Bank,* 704 N.E.2d 482, 490 (Ind.Ct. App.1998), *trans. denied* ). A confidential relationship exists when confidence is reposed by one party in another with resulting superiority and influence exercised by the other. *Id.* "Not only must there be confidence by one party in the other, but the party reposing the confidence must also be in a position of inequality, dependence, weakness, or lack of knowledge." *Id.*

In the present case, Fredrick and the Funeral Home had no relationship with the Yorks. Johnson had prepaid and prearranged her funeral through the Funeral Home. Consequently, the Yorks never had a relationship, even a contractual relationship with Fredrick or the Funeral Home. The only relationship was between Johnson and Fredrick and the Funeral Home. While Fredrick met with the Yorks following Johnson's death, these meetings never rose to a situation where the Yorks developed a relationship of confidence with Fredrick and the Funeral Home. Any relationship the Yorks had with Fredrick and the Funeral Home could only have originated from Johnson's contract with the Funeral Home, to which the Yorks were never a party. Even if the Yorks had a relationship with Fredrick and the Funeral Home because of Johnson's contract, it was only a contractual relationship. We conclude that the evidence before the trial court did not establish a fiduciary relationship between the Yorks and Fredrick and the Funeral Home. The trial court did not err in granting summary judgment as to the Yorks' claim of breach of fiduciary relationship.

### III. Motion to Strike

 In their statement of issues, the Yorks raise the issue that the trial court

erred in denying their motion to strike the Supplement to Facts and reply brief filed by Evans and Sexton Wilbert and their motion to reconsider the trial court's grant of Evans and Sexton Wilbert's motion for leave to file a Supplement to Facts and reply brief. However, the argument section of their brief does not contain any contentions on this issue, supported by cogent reasoning. Indiana Appellate Rule 46(A)(8)(a) states that the argument section of the appellate brief must contain "the contentions of the appellant on the issues presented, supported by cogent reasoning." Ind. Appellate Rule 46(A)(8)(a). A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. *Chapo v. Jefferson Cnty. Plan Comm'n,* 926 N.E.2d 504, 510 n. 4 (Ind.Ct.App.2010). Therefore, the Yorks have waived this claim.

Affirmed.

MATHIAS, J., and VAIDIK, J., concur.