ATTORNEYS FOR APPELLANT
ATLANTIC COAST AIRLINES
Bruce L. Kamplain
Joseph P. Maguire
Norris Choplin & Schroeder, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLANT
DELTA AIRLINES
John D. Papageorge
Sommer Barnard Ackerson, P.C.
Indianapolis, Indiana

ATTORNEYS FOR AMICI CURIAE
INSURANCE INSTITUTE OF INDIANA, INC. AND
INDIANA LEGAL FOUNDATION
Robert B. Clemens
George T. Patton, Jr.
Bryan H. Babb
Bose McKinney & Evans LLP
Indianapolis, Indiana

PRO SE ATTORNEYS FOR APPELLEE
Bryan L. Cook
Jennifer L. Cook
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 49S02-0505-CV-253

ATLANTIC COAST AIRLINES, DELTA
AIRLINES, AND GLOBE SECURITY
SERVICES, INC.,

> *Appellants (Defendants below),*

v.

BRYAN L. COOK AND JENNIFER L. COOK,

> *Appellees (Plaintiffs below).*

Interlocutory Appeal from the Marion Superior Court, No. 49D10-0208-CC-01463
The Honorable David J. Dreyer, Judge

_____

**December 6, 2006**

**Rucker, Justice.**

In an action to recover damages for the negligent infliction of emotional distress, Indiana's modified impact rule requires a claimant to demonstrate a direct physical impact resulting from the negligence of another. Where the physical impact is slight, or the evidence of the physical impact is tenuous, we evaluate the alleged emotional distress to determine whether it is not likely speculative, exaggerated, fictitious, or unforeseeable. In this case, we conclude that the emotional distress or mental anguish allegedly suffered by the plaintiffs is speculative, and thus their claim for emotional distress damages must fail.

**Facts and Procedural History**

This case arises from a passenger's behavior onboard an aircraft five months after the September 11th terrorist hijackings of airplanes and less than two months after Richard Reid lit a match onboard a flight from Paris to Miami and attempted to detonate explosives hidden in his shoe. On February 8, 2002 Bryan and Jennifer Cook arrived at the Indianapolis International Airport for a direct flight to New York City. Delta Airlines handled ticket arrangements, and Atlantic Coast Airlines operated the flight. Globe Security Services, Inc. provided security for the airport. While passengers waited to board, a man later identified as French national Frederic Girard ran toward the gate and abruptly stopped. Mr. Cook observed that the unaccompanied Girard had two tickets in his possession for the flight and that airline security had detained Girard at the boarding gate before allowing him onto the airplane. He further noticed that Girard's face was red and his eyes were bloodshot and glassy.

While boarding the Fairchild Dornier 328, a small airplane with a capacity for thirty-two passengers, Girard ran up the steps and jumped inside. Rather than proceeding to his assigned seat, he attempted to sit in a seat nearest the cockpit but the flight attendant instructed him to sit in the back row. Girard took a seat in the rear of the aircraft but repeatedly pressed the attendant call button and light switch above his head. Prior to take-off, Mr. Cook approached the flight

attendant and expressed concern that Girard was a possible security threat. The attendant acknowledged as much and explained that he had directed Girard to sit in the rear of the plane so he could keep an eye on him.

During take-off Girard disregarded instructions to remain seated with his seatbelt fastened. Then during the flight Girard lit a cigarette, disregarding directives from the flight attendant that smoking onboard was prohibited. Despite this admonition Girard was permitted to retain his lighter. Mr. Cook approached three male passengers and asked for their assistance in protecting the flight in the event Girard's behavior grew dangerous. Girard moved about the plane, sat in various empty seats and finally walked up the aisle toward the cockpit. Mr. Cook blocked his path and instructed him to sit. Without any physical contact with Mr. Cook, Girard returned to his seat and lit another cigarette. The flight attendant again told him to extinguish the cigarette, and in response Girard stood and shouted, "Get back! Get back!" At this, Mr. Cook and other passengers approached Girard and ordered him to sit down. Instead Girard stomped his feet and shouted in French. Discernable to the Cooks were the words "World Trade Center," "Americans," and "New York City." Eventually a Delta Airlines employee convinced Girard to sit after speaking to him in French. The employee spent the remainder of the flight sitting across from Girard in the rear of the plane. Ultimately the pilot diverted the flight to Cleveland, Ohio where police placed Girard under arrest. The flight then continued to New York City.

Recalling the events of September 11th, and recalling also a passenger's attempt to detonate a shoe bomb aboard an airplane with the use of a match, the Cooks described their ordeal as one in which they "have never been so scared in their entire lives." Br. of Appellee at 8. The husband and wife filed a complaint in the Perry Township Small Claims Court in Marion County, Indiana, naming as defendants Delta Airlines, Atlantic Coast Airlines, and Globe Security Services, Inc. The Cooks pursued their claim on theories of negligence and breach of contract. They also sought damages for the negligent infliction of emotional distress. The small claims court entered judgment against the Cooks, and they appealed to the Marion County Superior Court.[1] After both sides conducted discovery, during which the trial court entered an

---

[1] At the time the Cooks filed their complaint, Indiana Code section 33-11.6-4-14 provided, "All appeals from judgments of the [Marion County] small claims court shall be taken to the superior court of the county and tried de novo." Retaining the identical language, the Legislature re-codified the statute in 2004 as Indiana Code section 33-34-3-15(a).

order granting the Cooks' motion to compel discovery of Atlantic Coast's passenger manifest,[2] the defendants filed motions for summary judgment. Atlantic Coast alleged that it was entitled to judgment as a matter of law because the Cooks' negligence claim as well as their breach of contract claim was preempted by federal law, that the Cooks' complaint was barred for failure to file their appeal timely with the Marion Superior Court, and that the Cooks were not entitled to damages under Indiana's modified impact rule. In a joint filing Delta Airlines and Globe Security alleged that they were entitled to judgment as a matter of law because the Cooks were not entitled to damages under Indiana's modified impact rule, that the undisputed evidence showed there was no breach of contract, and that the undisputed evidence showed that Delta Airlines and Atlantic Coast were not partners as the Cooks alleged in support of their negligence claim.

After a hearing the trial court granted in part and denied in part the defendants' motions for summary judgment. More specifically, the trial court determined that the Cooks' complaint was not barred for failure to appeal timely to the Marion Superior Court, that neither Delta Airlines nor Atlantic Coast breached their contracts with the Cooks, that federal law did not preempt the Cooks' negligence claims, and that the Cooks' claims were not precluded under Indiana's modified impact rule. Delta Airlines and Atlantic Coast filed an interlocutory appeal and the Cooks cross-appealed. Globe Security did not challenge the trial court's order and has not otherwise participated in this appeal.

On review the Court of Appeals affirmed in part and reversed in part the judgment of the trial court. The Court of Appeals held: (1) the trial court did not err when it concluded that the Cooks' appeal of the small claims court's decision was timely; (2) the Cooks' tort claims are not preempted by federal law; (3) the Cooks' claims for the negligent infliction of emotional distress are not precluded under Indiana's modified impact rule; (4) the trial court correctly granted the Cooks' motion to compel discovery; (5) there are genuine issues of material fact regarding whether Delta Airlines and Atlantic Coast breached their contracts with the Cooks; and (6) the Cooks waived appellate review of whether the trial court erred in entering summary judgment in favor of Delta Airlines on the Cooks' negligence claims. Delta Airlines v. Cook, 816 N.E.2d 448 (Ind. Ct. App. 2004).

---

[2] Atlantic Coast sought interlocutory review of the trial court's order, which the Court of Appeals accepted. The Court of Appeals addressed this claim in the instant appeal.

4

Atlantic Coast sought rehearing complaining that the Court of Appeals' opinion abrogated the modified impact rule. In response, the court granted rehearing for the limited purpose of addressing this issue, but reaffirmed its opinion. Delta Airlines v. Cook, 821 N.E.2d 400 (Ind. Ct. App. 2005). Having previously granted Atlantic Coast's petition to transfer, we now affirm in part and reverse in part the judgment of the trial court. Having previously denied Delta Airlines' petition to transfer, see Delta Airlines v. Cook, Case No. 49S02-0505-CV-253 at 1 (Ind. May 26, 2005) (unpublished order), we summarily affirm those portions of the Court of Appeals' opinion relating to Delta Airlines. See Ind. Appellate Rule 58(A)(2).

**Discussion**

**I.**

In its petition to transfer Atlantic Coast makes three claims: (1) the Cooks' claim for emotional distress damages is precluded by Indiana's modified impact rule; (2) the Court of Appeals erred in reversing summary judgment in favor of Atlantic Coast on the Cooks' breach of contract claim because "[t]here is absolutely no evidence in the record what the exact contract was and exactly how Delta and [Atlantic Coast] breached their contract," Atlantic Coast's Pet. to Trans. at 13; and (3) the Cooks' negligence claim is preempted by federal law.[3]

In addressing the question of whether federal law preempts state law negligence claims, the Court of Appeals noted the split of authority on this issue.[4] After a lengthy discussion the court held that the decision to allow an apparent security risk to board an airplane does not "relate to" an airline's "services" within the meaning of section 1305 of the federal Airline

---

[3] Atlantic Coast does not challenge the Court of Appeals' determination regarding the discovery order, and the Cooks do not challenge the determination that they waived appellate review of the trial court's grant of summary judgment in favor of Delta Airlines on the Cooks' negligence claim.

[4] Compare, for example, Abdullah v. Am. Airlines, Inc., 181 F.3d 363 (3rd Cir. 1999) (holding that federal law establishes the applicable standards of care in the field of aviation safety generally and thus preempts the entire field from state regulation), and O'Carroll v. Am. Airlines, Inc., 863 F.2d 11 (5th Cir. 1989), cert. denied, 490 U.S. 1106 (1989) (airline passenger's state law claims following removal from flight for disorderly conduct expressly preempted by federal law), with Smith v. Am. W. Airlines, Inc., 44 F.3d 344, 346 (5th Cir. 1995) ("Neither the language nor history of the ADA implies that Congress was attempting to displace state personal injury tort law concerning the safety of the airline business."), and In re Air Disaster, 819 F. Supp. 1352 (E.D. Mich. 1993) (negligence claims arising from an airplane crash, alleging negligent operation of airplanes, not preempted by ADA).

Deregulation Act of 1978.  Delta Airlines, 816 N.E.2d at 458.  See 49 U.S.C. § 1305(a)(1) (The current version at 49 U.S.C. § 41713(b)(1) provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . .").  The Court of Appeals thus concluded that federal law does not preempt the Cooks' tort claims.  We agree with the Court of Appeals on this issue and summarily affirm that portion of its opinion.  We also agree with the Court of Appeals' resolution of the Cooks' contract claim.[5]  However, we have a different view from our colleagues regarding whether the trial court erred in denying Atlantic Coast's motion for summary judgment on the Cooks' claim for emotional distress damages.

## II.

We recite our often-stated standard of review.

> When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard as the trial court.  A party seeking summary judgment must show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  The review of a summary judgment motion is limited to those materials designated to the trial court. The court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the non-moving party, and resolves all doubts against the moving party.

Sees v. Bank One, Ind., N.A., 839 N.E.2d 154, 160 (Ind. 2005) (citations omitted).  Claims for the negligent infliction of mental or emotional distress have long been the subject of scholarly

---

[5] Although Atlantic Coast does not raise the issue in precise terms on transfer, it seems to imply that federal law also preempts the Cooks' breach of contract claim.  However that is not the case.  See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 222 (1995) (holding that "the ADA's preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves"); Weiss v. El Al Isr. Airlines, Ltd., 433 F. Supp. 2d 361, 369 (S.D.N.Y. 2006) ("[I]n . . . Wolens . . . the Supreme Court explained that ADA § 105 precludes only state tort law suits and does not reach suits brought under state contract law."); Skydive Factory, Inc. v. Me. Aviation Corp., 268 F. Supp. 2d 61, 62 (D. Me. 2003) (on complaint for damages to aircraft on theories of breach of contract and negligence, district court cited Wolens for proposition that plaintiff's "breach of contract claim . . . is not preempted"); Kingsley v. Lania, 221 F. Supp. 2d 93, 97 (D. Mass. 2002) ("As a result of this [Wolens] decision, all contract actions, including claims of breach of duty to transport a passenger, have been found not to be preempted.").

debate.[6]  Creating rules, formulating tests, and applying them to address such claims have proven a challenge for most courts.  The majority of jurisdictions employ some variation or combination of the following common law limiting tests for evaluating these claims: the "physical injury" rule under which, generally speaking, the plaintiff's emotional distress must be accompanied by a physical injury or symptom, see, e.g., Lee v. State Farm Mut. Ins. Co., 533 S.E.2d 82, 85 (Ga. 2000); Camper v. Minor, 915 S.W.2d 437, 444 (Tenn. 1996); the "zone of danger" rule, under which recovery is limited to those plaintiffs who themselves were not physically injured but were placed in immediate risk of harm by a defendant's negligent conduct which injured another, see, e.g., Johnson v. District of Columbia, 728 A.2d 70, 77 (D.C. Cir. 1999); Wall v. Fairview Hosp. & Healthcare Servs., 584 N.W.2d 395, 408 (Minn. 1998); Nielson v. AT&T Corp., 597 N.W.2d 434, 442 (S.D. 1999); Harnicher v. Univ. of Utah Med. Ctr., 962 P.2d 67, 69-70 (Utah 1998); Leo v. Hillman, 665 A.2d 572, 577 (Vt. 1995); and the "bystander" test, also sometimes called the "foreseeable bystander" test, which allows recovery to certain plaintiffs that witness the injury or death of a third party (who typically must be a close relative of the bystander) that is caused by the defendant's negligence, see, e.g., Allstate Ins. Co. v. Teel, 100 P.3d 2, 5 (Alaska 2004); Engler v. Ill. Farmers Ins. Co., 706 N.W.2d 764, 770-71 (Minn. 2005); Perrotti v. Gonicberg, 877 A.2d 631, 636 (R.I. 2005); Finnegan ex rel. Skoglind v. Wis. Patients Comp. Fund, 666 N.W.2d 797, 803 (Wis. 2003).  The underlying policy reason binding together these judicially created approaches is that absent certain limitations, allowing recovery for mental or emotional distress will open the floodgates to spurious claims.

Before 1991 Indiana followed the rule that damages for mental or emotional distress were recoverable only when accompanied by and resulting from a physical injury.  See generally Charlie Stuart Oldsmobile, Inc. v. Smith, 171 Ind. App. 315, 357 N.E.2d 247, 253 (1976), modified on other grounds, 175 Ind. App. 1, 369 N.E.2d 947.  The underlying rationale for this rule was that "absent physical injury, mental anguish is speculative, subject to exaggeration, likely to lead to fictitious claims, and often so unforeseeable that there is no rational basis for

---

[6] See generally Robert J. Rhee, A Principled Solution for Negligent Infliction of Emotional Distress Claims, 36 Ariz. St. L.J. 805 (2004); Julie A. Greenberg, Negligent Infliction of Emotional Distress: A Proposal for a Consistent Theory of Tort Recovery for Bystanders and Direct Victims, 19 Pepp. L. Rev. 1283 (1992); Peter A. Bell, The Bell Tolls: Toward Full Tort Recovery for Psychic Injury, 36 U. Fla. L. Rev. 333 (1984); Comment, Negligently Inflicted Mental Distress: The Case for an Independent Tort, 59 Geo. L.J. 1237 (1971); Calvert Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harv. L. Rev. 1033 (1936); Archibald H. Throckmorton, Damages for Fright, 34 Harv. L. Rev. 260 (1921).

awarding damages." Cullison v. Medley, 570 N.E.2d 27, 29 (Ind. 1991). But this court modified the rule in Shuamber v. Henderson. We held instead:

> When . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains an emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, . . . such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

Shuamber v. Henderson, 579 N.E.2d 452, 456 (Ind. 1991).

We further expounded upon the contours of what is now commonly referred to as the "modified impact rule" in two cases handed down the same day. In Conder v. Wood, 716 N.E.2d 432, 435 (Ind. 1999), we held, "'direct impact' is properly understood as the requisite measure of 'direct involvement' in the incident giving rise to the emotional trauma. Viewed in this context, we find that it matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct." Id. (finding that a pedestrian suffered a direct impact by pounding upon the panels of a truck that was running over her co-worker). In Ross v. Cheema, 716 N.E.2d 435, 437 (Ind. 1999), we held, "[i]n causing the requisite physical injuries, the direct impact is properly understood as being 'physical' in nature. Though removing the physical injury element, Shuamber in no way altered the 'impact' element of the rule. For purposes of the modified rule, the direct impact sustained by the plaintiff must necessarily be a 'physical' one." Id. (rejecting claim that plaintiff sustained the direct physical impact necessary to recover damages for negligent infliction of emotional distress by merely hearing a loud pounding at her door).

As Shuamber, Conder, and Ross make clear, the modified impact rule maintains the requirement of a direct physical impact. The impact however does not need to cause physical injury to the plaintiff. Additionally the emotional trauma suffered by the plaintiff does not need to result from a physical injury caused by the impact. But how do we assess whether the degree of impact is sufficient to satisfy the requirement of the rule? We have answered this question as follows:

> [W]hen the courts have been satisfied that the facts of a particular case are such that the alleged mental anguish was not likely speculative, exaggerated, fictitious, or unforeseeable, then the claimant has been allowed to proceed with an emotional distress claim for damages even though the physical impact was slight, or the evidence of physical impact seemed to have been rather tenuous.

Bader v. Johnson, 732 N.E.2d 1212, 1221 (Ind. 2000) (finding that mother's continued pregnancy and the physical transformation that her body underwent satisfied the direct impact requirement) (citing Alexander v. Scheid, 726 N.E.2d 272, 283-84 (Ind. 2000) (holding that patient suffering from the destruction of healthy lung tissue due to physician's failure to diagnose cancer was sufficient for negligent infliction of emotional distress); Holloway v. Bob Evans Farms, Inc., 695 N.E.2d 991, 996 (Ind. Ct. App. 1998), trans. not sought (concluding that restaurant patron's ingestion of a portion of vegetables cooked with a worm was a direct physical impact under the modified impact rule); Dollar Inn, Inc., v. Slone, 695 N.E.2d 185, 189 (Ind. Ct. App. 1998), trans. denied (finding that hotel guest stabbing herself in the thumb with a hypodermic needle concealed in a roll of toilet paper was sufficient for claim of emotional distress associated with guest's fear of contracting AIDS)).

We acknowledge there have been calls to abandon the impact rule altogether. See, e.g., Delta Airlines, 821 N.E.2d at 401 (asserting that the reasoning underlying this Court's decision to eliminate the physical injury requirement under the impact rule "also supports eliminating the physical impact requirement under the modified impact rule"); Ketchmark v. N. Ind. Pub. Serv. Co., 818 N.E.2d 522, 526 (Ind. Ct. App. 2004), trans. not sought (Crone, J., dissenting) (declaring that, "the time has come to clear the decks of the so-called 'impact rule' and to allow the tort of negligent infliction of emotional distress to stand on its own inherent elements"). Among other things there are concerns that Indiana's impact rule, even as modified, may prohibit some litigants from recovering damages for bona fide emotional injury even though there has been no physical impact. These are respectable positions. But this jurisdiction is not alone in grappling with this area of the law for which there is no grand unified theory. We agree with the observations of the California Supreme Court:

> In order to avoid limitless liability out of all proportion to the degree of a defendant's negligence, and against which it is impossible to insure without imposing unacceptable costs on those among whom the risk is spread, the right to recover for negligently

9

> caused emotional distress must be limited. . . . [W]e balance the impact of arbitrary lines which deny recovery to some victims whose injury is very real against that of imposing liability out of proportion to culpability for negligent acts. We also weigh in the balance the importance to the administration of justice of clear guidelines under which litigants and trial courts may resolve disputes.

Thing v. La Chusa, 771 P.2d 814, 826-27 (Cal. 1989) (reaffirming California's application of the bystander rule for emotional distress damages). It is our view that the requirements under Indiana's rule are modest and that a less restrictive rule would raise the potential for a flood of trivial suits, pose the possibility of fraudulent claims that are difficult for judges and juries to detect, and result in unlimited and unpredictable liability. We therefore reaffirm that Indiana's impact rule continues to require a plaintiff to demonstrate a direct physical impact resulting from the negligence of another.

## III.

This Court has carved out an exception to the physical impact requirement for the negligent infliction of emotional distress.[7] Mindful that the underlying rationale for direct impact is that "it provides clear and unambiguous evidence that the plaintiff was so directly involved in the incident giving rise to the emotional trauma that it is unlikely that the claim is merely spurious," we recognized that there may be circumstances under which a "plaintiff does not sustain a direct impact" but is nonetheless "sufficiently directly involved in the incident giving rise to the emotional trauma that we are able to distinguish legitimate claims from the mere spurious." Groves v. Taylor, 729 N.E.2d 569, 572 (Ind. 2000). We thus adopted what is now commonly referred to as the bystander rule. "[W]here the direct impact test is not met, a bystander may nevertheless establish 'direct involvement' by proving that the plaintiff actually witnessed or came on the scene soon after the death or severe injury of a loved one with a relationship to the plaintiff analogous to a spouse, parent, child, grandparent, grandchild, or sibling caused by the defendant's negligent or otherwise tortious conduct." Id. at 573. In sum, in order to recover damages for the negligent infliction emotional distress, a plaintiff must satisfy

---

[7] There is also an exception to the physical impact requirement for claims of intentional infliction of emotional distress, see Cullison, 570 N.E.2d at 30, as well as "cases where the defendant's conduct was inspired by fraud, malice or like motives involving intentional conduct." Shaumber, 579 N.E.2d at 454 (citations omitted). No such claims have been made in this case.

either the modified impact rule or the bystander rule.[8] The elements for each are separate and distinct.

## IV.

Turning to the case before us, the Cooks do not contend that the bystander rule applies to them. That is, the Cooks do not argue that they witnessed the death or severe injury of a loved one. Rather, their claim rises or falls on whether they suffered a direct physical impact from the alleged negligence of Atlantic Coast.[9] The Cooks insist they did so and that the physical impact was both actual and constructive. According to the Cooks, breathing the smoke from Girard's lit cigarette and experiencing the vibrations from Girard's stomping feet caused an actual physical impact, and "constructive impact occurred by virtue of the physical effects on the [Cooks'] vital body functions in increased breathing, sweating, pulse, heart rate, adrenaline, and acuteness of the senses." Br. in Opp. to Pet. for Trans. at 4. We first observe that neither this Court nor the Court of Appeals has ever addressed or adopted a theory of "constructive impact" as part of Indiana's impact rule, and we decline to do so today. In any event, citing this Court's opinion in Alexander, the Court of Appeals characterized what the Cooks contend amounts to constructive impact as "physical changes" that are "good enough" to satisfy the rule. Delta Airlines, 821 N.E.2d at 403.

---

[8] But see Keim v. Potter, 783 N.E.2d 731 (Ind. Ct. App. 2003), trans. not sought (a medical malpractice action in which patient wrongly diagnosed with hepatitis C was allowed to pursue emotional distress damages on grounds of his "direct involvement" where there was no physical impact); Blackwell v. Dykes Funeral Homes, Inc., 771 N.E.2d 692 (Ind. Ct. App. 2002), trans. denied (permitting parents to pursue damages for emotional distress for the loss of son's cremated remains although there was no physical impact and the elements for the bystander exception were not met).

[9] Although not stated in express terms, the Cooks' assertion of Atlantic Coast's alleged negligence is apparently premised on an airline's duty as a common carrier. See, e.g., Louisville & Jeffersonville Ferry Co. v. Nolan, 135 Ind. 60, 64 (1893) ("It is the settled law of this State that a carrier of passengers is not an insurer of the safety of its passengers, but it is required to exercise the highest degree of care to secure their safety, and it is liable to a passenger, who is himself without fault, for any omission or failure to exercise this power, and for the slightest neglect of duty in this respect."); Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc., 547 N.E.2d 244, 253 (Ind. 1989) ("[T]he special duties of the common carrier are said to arise from the fact that the passenger has entrusted his safety, as a bailor entrusts his goods, to the custody and safekeeping of the carrier. The carrier, like the bailor, is to exercise control over the 'goods' which have been confided to its care and over the circumstances in which they are found so as to ensure their security.").

11

In Alexander the plaintiff sued her physician for failure to diagnose her lung cancer. Among other things she sought damages for emotional distress. Her healthcare providers argued that the plaintiff failed to satisfy the impact rule because the failure to diagnose cancer does not constitute an impact. We disagreed because the impact was not the failure to diagnose: "Rather, allegedly as a result of the defendants' negligence, [the plaintiff] suffered the destruction of healthy lung tissue by a cancerous tumor. . . . This is good enough." Alexander, 726 N.E.2d at 284. We decline to equate a physical change resulting from the destruction of healthy lung tissue with what can best be described as the human body's natural responses to fear and anxiety. Indeed, "increased breathing, sweating, pulse, heart rate, adrenaline, and acuteness of the senses" are more descriptive of stress-like symptoms experienced by many passengers during a normal airplane flight that is undergoing turbulence. They simply are not physical changes as anticipated by Alexander. Nor are they physical transformations as anticipated by Bader, 732 N.E.2d at 1222 (plaintiff's "continued pregnancy and the physical transformation her body underwent as a result, satisfy the direct impact requirement of our modified impact rule").

This leaves for our consideration whether smelling cigarette smoke and feeling floor vibrations satisfy the direct physical impact requirement of the rule. We first observe that at the very least this stretches the outer limits of the impact requirement. Indeed we doubt that most ordinary citizens would think of smelling cigarette smoke and feeling floor vibrations as physical impacts of any kind. But even assuming that in some theoretical sense these experiences may be characterized as physical impact, the impact was certainly very "slight" and "the evidence of physical impact seem[s] to have been rather tenuous." Bader, 732 N.E.2d at 1221. We thus explore whether the Cooks' alleged mental anguish is "not likely speculative, exaggerated, fictitious, or unforeseeable." Id.

Mr. Cook acknowledges that neither he nor his spouse have sought medical or mental health treatment for their mental or emotional distress. In his deposition, which was before the trial court as part of the Rule 56 materials, Mr. Cook described his emotional state as being "shaken up . . . anxious, just upset" and that he remained so "until [he and his wife] got to New York and got on the ground." App. at 176. Mr. Cook also testified that he was "distraught" and "probably didn't sleep well for at least a week and a half." Id. He further asserted "whenever I get on a flight, I'm concerned that something could happen." Id. at 185. According to Mr. Cook, "I will never view things the same as I did before February 8th, '02. I will never view

12

things as – without the concern. I'm not saying it's going to ruin my life, but I will always be – I will always remember it, and I will always – if certain news stories come on, certain things are said, certain situations, when we have terror alerts, and so forth, I will – it will always trigger the memory, and I will always – it will always be in the back of my mind." Id.

In her deposition, also before the trial court as part of the Rule 56 materials, Mrs. Cook, who was seven months pregnant at the time of the incident, reported that after arriving in New York she "was just having lower abdominal pains. Could have been brought on by stress." App. at 227. Further, she reported that she started to feel better, "[o]nce we got home and I got back into my normal routine." Id. at 228. Mrs. Cook also testified that she and her husband have traveled by air probably four times since this incident. On those flights Mrs. Cook described her emotional state as "I'm always nervous." Id. When asked about the harm she incurred from the flight of February 8, 2002, Mrs. Cook said, "I feared for my life. I thought I was going to die." Id. at 230. But she stopped having those fears "[w]hen we landed." Id. According to Mrs. Cook, "It bothered me until we landed. It bothered me that it happened. It bothers me every time I get on a plane." Id.

Apparently the alleged mental and emotional distress the Cooks experienced manifested itself in fear and anxiety at the time the events were unfolding. But this fear and anxiety were transitory, disappearing once the Cooks completed their flight. Since that time, in their own words, the Cooks have experienced feelings of being "bothered," "concerned," and "nervous." But these feelings about the world around us in general and air travel in particular is the plight of many citizens in this country, living as we do in a post-September 11 environment. As one treatise has explained:

> Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

Restatement (Second) of Torts § 46 cmt. j (1965). We do not suggest that the Cooks' fear and anxiety during the flight were trivial. But there was simply nothing before the trial court, and by extension before this Court, suggesting that the Cooks' fear and anxiety were anything other than

13

temporary. And it is pure speculation to assume that the Cooks' later feelings of being bothered, concerned, and nervous are causally related to the events aboard the flight. Because the physical impact in this case was slight to nonexistent, allowing an emotional distress claim to proceed based on the Cooks' lingering mental anguish would essentially abrogate the requirements of Indiana's modified impact rule. In essence we view the alleged mental anguish here as speculative. Accordingly the trial court erred in denying Atlantic Coast's motion for summary judgment on this issue.

## Conclusion

We affirm the trial court's denial of Atlantic Coast's motion for summary judgment on the question of federal preemption. We reverse the trial court's grant of summary judgment in favor of Atlantic Coast on the Cooks' breach of contract claim. And we reverse the trial court's denial of Atlantic Coast's motion for summary judgment on the Cooks' claim for emotional distress damages. This cause is remanded.

Shepard, C.J., and Dickson, Sullivan and Boehm, JJ., concur.